**BYERS et al.**

v.

**UNITED STATES et al.**

**Civ. A. No. 2356.**

United States District Court

D. New Mexico.

June 17, 1954.

J. B. Newell, Las Cruces, N. M., for plaintiff and intervener.

James A. Borland, Asst. U. S. Atty., Albuquerque, N. M., for defendant.

WALLACE, District Judge.

The plaintiffs, R. L. Byers, Jr., a citizen of Texas and the Insurance Company of North America of Philadelphia, Pa., (authorized to do business in Texas) bring this action under the Federal Tort Claims Act[1] to recover for certain losses sustained when two tractor-trailers, owned by Byers and insured in part by North America, had accidents with two government vehicles which were left standing in the center of U. S. Highway 70 at points near the access road leading to the government White Sands Proving Ground located in Dona Ana County, New Mexico.

These two accidents occurred about 3:00 p. m. on February 20, 1953, at a time when military authorities were just concluding certain military missiles tests at the proving ground.

The case was tried before the Court, without a jury and the introduced evidence indicated:

(1) On the day of the accident, at about 1:50 p. m. military authorities set a road block on U. S. Highway 70 at a point some 2 or 3 miles west of the access road leading from the highway to the proving ground; this road block was designated Station RED. Notice to approaching traffic of this road block was given by placing portable or temporary "Caution" and "Road Block" warning signs from ½ to 1½ miles west of Station RED up the mountain along Highway 70.

(2) At 2:45 p. m., some two minutes before the road block at Station RED was lifted, an army radio truck was parked across Highway 70 by the military personnel at the entrance leading to the proving ground; this road block was designated Station BLUE. When this road block was established no warning or caution signs were placed along the highway to advise the traffic coming from the west that such road block existed.

(3) Highway 70, from the top of the pass 6 miles west of the point at which Station BLUE was set up, has a descending grade averaging some 220 feet per mile down to a point some 2½ miles east of where Station BLUE was placed; this descent includes some winding road and several rather severe dips.

(4) At Station BLUE the highway was blocked by placing an army radio truck in the center of the 24 feet in width highway, leaving the front of the

1. 28 U.S.C.A. § 1346(b).

radio truck protruding about 4 feet over into the north lane.

(5) The first of the two tractor-trailers involved in an accident came down Highway 70 in an easterly direction at a speed of about 60 miles per hour. The government radio truck was parked in such a position as to make it impossible for the first tractor-trailer to drive by said military truck and still remain on the highway (including the shoulder) without some contact between the two vehicles; and, the tractor-trailer in maneuvering around said radio truck struck the front end of the government vehicle a glancing blow and proceeded on down the highway from the point of impact 3.1 miles before coming to a stop.

(6) Immediately after the first accident, the soldier in charge of a government pickup truck which had been parked alongside the government radio truck attempted to move said pickup off the highway, but upon stalling the motor, abandoned the pickup truck crosswise in the center of the highway blocking the north lane.

(7) The second of the two tractor-trailers, which was traveling in an easterly direction some 3 miles behind the first tractor-trailer at the time of the first accident, approached Station BLUE at the speed of 50 miles per hour. Due to the presence of the abandoned pickup truck which blocked the highway in the center and to the north, and because of the group of persons who had gathered at the point of the road block, the driver of the second tractor-trailer steered his vehicle off the highway into a roadside gulch, resulting in injury to the driver, all but complete loss of the tractor, and some damage to the trailer.

■ Clearly, the government is legally responsible for the damage and injury which resulted from the accident involving the *second* tractor-trailer, inasmuch as said unit was being driven at 50 miles per hour, a speed within the statutory limit [2] and within the dictates of reasonable prudence. If the government servants had posted warning signs from 1½ to 2 miles west of the road block at Station BLUE, as ordinary care in this situation demanded, this second unit could have stopped and avoided the accident.[3] The driver of the second unit was in no way guilty of negligence and exercised excellent judgment in ditching his moving equipment in view of the confronting facts and circumstances.

■ However, in rationalizing the liability of the government insofar as the damage caused to the *first* tractor-trailer is concerned, a rather unique problem in regard to proximate cause arises inasmuch as the driver of the first tractor-trailer was guilty of negligence in driving this large, heavily loaded unit at a speed of 60 miles per hour, or more, down this grade. Nonetheless, after thorough consideration the Court has concluded that the plaintiff is entitled to also recover from the government for damage suffered by the first unit in the impact with the government radio truck.

Although the first tractor-trailer was driven at a speed in excess of the statutory maximum [4] and at a speed greater than that allowed by reasonable care under the existing circumstances, such negligence was not a proximate cause of the collision for the reason that the accident would have happened even if the first tractor-trailer had not been proceeding at an excessive rate of speed; consequently, such negligence cannot be deemed to have as a matter of law contributed to the accident.[5] When the government servants placed the radio

---

2. N.Mex.Stat.1941, § 68–504 provides: "* * * (b) Maximum Speed * * * No truck shall be operated at a speed greater than the posted speed limit for any highway or section thereof, and no truck shall in any event be operated at a speed in excess of fifty (50) miles per hour. * * *"

3. The testimony indicates that at a speed of about 50 miles per hour the truck in question could be stopped on a grade such as the one here involved within a distance of from one to two miles.

4. Fn. 2, supra.

5. As stated in 38 Am.Jur. § 213: "Tests of Proximate Cause. * * * the plain-

truck on the highway, without first placing adequate warning signs, a hazardous condition was created of such a type as to cause the accident between the first unit and the radio truck *even if* the tractor-trailer had been traveling at a speed commensurate with the statute and ordinary care; in fact, the accident would have occurred even if this first tractor-trailer had been traveling only 40 miles per hour, inasmuch as the first notice the driver of said unit had of the road block was some .6 of a mile west of the parked radio truck, much too short a notice to have successfully avoided a collision, even at such a speed.[6]

The Court has not failed to consider the antithetical argument urged on behalf of the government that although due care on its behalf required the posting of warning signs that even so such an omission was *not* the proximate cause of the accident in question for the reason that even if warning signs had been posted 1½ to 2 miles from the road block, the accident still would have occurred for the reason that the first tractor-trailer in traveling at 60 miles per hour could not have avoided a collision with the radio truck, had it been given a warning 1½ to 2 miles from Station BLUE; such a factual argument is corroborated by this Court's own finding that it took the first tractor-trailer a distance of more than 3½ miles to stop.

However, this argument ignores one essential component part of the government's conduct, which conduct in totality proximately caused the accident involving the first tractor-trailer. Although, it is true that the government could not be held legally liable for any such accident had adequate warning been posted in connection with their specific authority to establish road blocks for governmental purposes, such does not alter the fact that when the military personnel omitted to place proper warning signs and then placed a government vehicle in a position to obstruct the highway, such act of *commission* combined with the act of *omission* to proximately cause the collision; in reality, the efficient moving cause of the collision was the unlawful obstructing of the highway,—a positive negligent act. Although such a positive act could have been purged of its negligent character by the posting of adequate "Road Block" warning signs, such does not in essence change the fact that the government, in first failing to post warning signs, proceeded to unlawfully and negligently park a government vehicle in the center of a heavily traveled arterial highway, and thus bring about the impact in question. If the radio truck had not been negligently parked across the highway, the accident would not have ensued.

tiff's negligence must have entered into and formed part of the efficient cause of the injury. If it appears that the injury would have occurred if the plaintiff had not been guilty of the fault charged against him, a recovery should not be denied on the ground of contributory negligence. In other words, in order to defeat his action the plaintiff's conduct must have contributed to the injury in such a way that if he had not been at fault he would have escaped injury entirely." In "A Treatise on the Law of Torts" by F. V. Harper, Prof. of Law in Indiana University, in discussing an analogous case wherein the plaintiff was driving at an excessive rate of speed, the writer made the following observation at p. 300: "* * * It would seem that there is a serious doubt whether the plaintiff's speed can be regarded as a cause in fact of the initial collision, as the accident quite probably would have occurred anyway in view of the nature of the defendant's driving. A number of well-considered cases have so held. In any event it would seem a proper question for the jury whether the plaintiff's speed substantially and materially contributed to the impact or whether the initial collision would have occurred anyway. If it did not so contribute, he is not barred from recovering for such initial collision, for his conduct could not be a legal cause if it was not a cause in fact of the collision. * * *"

6. Although there is some evidence that the road block was in fact visible at various points along the highway as far back as 2.5 miles and on toward the point of the road block, the first point where clearly the driver of a vehicle was put on notice was .6 of a mile west of the road block.

As to the first cause of action plaintiff Byers is entitled to judgment for $366.48, the amount paid out on the $100 deductible tractor policy and the $266.48 paid out on the uninsured trailer; and, the plaintiff insurance company is entitled to recover the $113.44 it paid out under the tractor policy. Plaintiff Byers is not entitled to loss of use as to the first unit for the reason that the cause of non-use of such unit was the engine damage, including a broken block, which damage did not result·from the slight impact with the government truck, but came about due to the manner the tractor was driven.

Under the second cause of action plaintiff Byers is entitled to $434.03, the net amount paid out by Byers for physical damage to the second tractor and trailer, and $1,200 for loss of use of said unit; plaintiff insurance company is entitled to $6,341.74 the amount it paid out under the tractor insurance policy; and, intervenor insurance company is entitled to $1,937.70, the amount paid out in connection with personal injuries sustained by the driver of the second unit.

Counsel should submit a journal entry which conforms with this opinion within fifteen days.